THE STATE, SAMUEL BULLOCK and others, Township Com-
mittee of Westhampton Township, Burlington County,
prosecutors, *vs.* GEORGE W. ATKINSON and others.

1. A mere clerical error in the name of one of the land-owners across
whose land the road is intended to be laid, is not such a variance as will
set aside the proceedings, if correct in other respects, and the road as laid
be unmistakable.

2. Notice of the time and place of meeting of the surveyors may be served
by the applicants, or by any other person in their behalf.

3. By the supplement to the road act, passed March 1st, 1850, the words,
" ever having regard to the appointment of those surveyors of the town-
ships in which the road is applied for to be laid out," &c., are rendered in-
poerative, and need not appear, in the order appointing the surveyors, that
regard was had to the appointment of such surveyors.

4. If the application is to lay a road running a northwesterly direction,
and one of the many courses of the road, as laid, is southwest, this is not a
sufficient variance to set aside the return, if the general course of the road
laid be northwesterly, when the beginning and ending points are com-
pared with each other.

On *certiorari* to Burlington Common Pleas.

Argued before Justices HAINES and CLAWSON.

*Ten Eyck* and *Browning*, for plaintiffs.

*W. L. Dayton*, for defendants.

The opinion of the court was delivered by

CLAWSON, J. This is a *certiorari*, directed to the Burling-
ton Common Pleas, to bring up to this court for review cer-
tain proceedings in a matter of a public road. The appoint-
ment of surveyors was made at the September Term, 1856,
of the Common Pleas of Burlington county, and the return
of the surveyors, laying out the road applied for, was ordered
to be recorded on May 2d, 1857.

The reasons relied on for reversing the action of the
Common Pleas of Burlington, and setting aside the re-

turn of the surveyors, are—1st. Variance between the *petition*, and the *order* of appointment, and between the *order* and the *return* of the surveyors, in that the name Josephus Sooy, in the petition, is made Josephus Sooy, Jr., in the order, and again Josephus Sooy in the return. 2d. It does not appear, by the return, that notice of the time and place of meeting of the surveyors was served, *by the applicants*, on two absent surveyors. 3d. It does appear, by the order, that " regard was had to the appointment of the surveyors of the highways of those townships where the said road was applied for to be laid out." 4th. Variance between the application and return in the course of the road.

As to the first objection, the facts appear to be, that Josephus Sooy, Jr., signs the application for a road to run through lands of Josephus Sooy and others, naming them; in the order appointing the surveyors, the name is made, by the clerk, Josephus Sooy, Jr., instead of Josephus Sooy, as in the petition; but in the return by the surveyors, the name is made Josephus Sooy, as in the application; and in the assessment returned by the surveyors the damages are given to Josephus Sooy; also, in the map returned by the surveyors, the road is described as running through lands of Josephus Sooy. It appears to be but a mere clerical error in the order only, evidently a mere oversight of the clerk, committed in the hurry of the moment in writing the order and making copies of the order for service, and should not affect the proceedings, especially as there appears to be no land along the line of the road belonging to Josephus Sooy, Jr., and no one can be, or has been misled or injured by the mistake. Moreover, the road crosses the lands of many other persons, all of whom are correctly named, and the same is so minutely defined throughout, by courses and distances, by remarkable places, monuments, and improvements along the line thereof, that it must be altogether unmistakable.

We think there is nothing substantial in the second objection. Although the return of the surveyors does not show that notice of the time and place of meeting of the surveyors was served by the *applicants* on the two absent surveyors, yet it does appear thereby that notice had been served on the absentees; and whether served by the applicants or by some other person, by their authority and in their behalf, can make no difference. The object of the notice mentioned in the first section of the road act merely is, that the surveyors shall be apprised of the time and place of meeting; and in this respect the return shows that the statute has been substantially complied with. A similar construction should be given to the service of notices of meeting of the surveyors, in this instance, as is given to the putting up of the notices of application in the case of *The State* v. *Lewis*, 2 Zab. 565.

The third objection is, that it does not appear, by the order appointing the surveyors, that regard was had to the appointment of the surveyors of the township in which the road was to be laid. This phraseology of the statute had acquired a sort of technical meaning or construction. Its signification, previous to the passage of the act, approved March 1st, 1850, giving damages to land owners who were not applicants, to be paid by the township in the case of a public road, seemed to be, that a preference of appointment should be given to the surveyors of the township in which the road was proposed to be laid, and that they must be appointed, unless some interest be shown, or some other good and sufficient reason why they should not be appointed. But, by the passage of the act of 1850, the township becomes interested in the matter of damages in the laying out of all public roads; and, of course, every surveyor of the highways and every inhabitant of such township is more or less interested; consequently it would be improper to appoint such surveyors in any case. The recent practice has been to avoid their appointment in all cases.

Although these words, "ever having regard to the appointment of the surveyors of the highways of those townships where the said road shall be so applied for to be laid out, vacated or altered," are not explicitly repealed by the act of 1850, they have at least been rendered nugatory. No regard should be had, or, in equivalent words, no preference should be given to the surveyors of such townships. On the contrary, it would be improper to appoint such surveyors in the case of a public road, and therefore we think it altogether unnecessary to mention the fact in the order; indeed it would not be true in point of fact, if the word *regard* is synonymous with the word *preference*, according to the construction heretofore given, acted upon and settled; for the very reason that the law of 1850, and the practice of the courts since the passage of that law, have forced upon the word a directly opposite meaning. There is a propriety in not erasing these words from the first section of the act, depending upon the terms used in the second section applicable to private roads, because they are as applicable to the appointment of surveyors to lay out, vacate or alter a private road, perhaps, as they ever were.

As to the objection that the road applied for was to run a northwesterly direction, and the one laid runs a northwesterly direction, except as to one course, which is southwesterly, cannot be held to be a variance under the authority of the cases heretofore decided by this court. There is no pretence that the beginning and ending of the road, as applied for, are not sufficiently designated; and all that is necessary in defining the course of the road is to do so in general terms. 1 *South.* 31. It would be improper to describe it by courses and, distances, because this would take away from the surveyors all discretion. They would have no right to vary from the courses named to avoid bad ground, to do less injury to private property, or for any other purpose whatever. The general course of the road, as applied for, is northwesterly, when

we compare the beginning and ending points with each other. If the application had been for a road complete in the first two courses of this (viz., 1, N. 85° 40′ W.; 2, S. 84° W.) it would have been imprudent, at least, to have described the courses thus minutely; but it might have been described, in those general terms heretofore approved, as running first a northwesterly course to or near a certain definite point, then a southwesterly course, and ending at or near a certain other definite point. But when this second course is one of many marking the entire line of a road some two and a half miles in length, and the general course of the entire road, as laid, appears to correspond with that applied for, there is no reason in such objection for setting aside the return of the road.

The proceedings of the Common Pleas must be affirmed.

CITED *in Parsell v. State,* 1 *Vr.* 543; *State v. Hulick,* 4 *Vr.* 309; *State v. Pierson,* 8 *Vr.* 364.